## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

QUENTIN WATSON                                CIVIL ACTION

VERSUS                                        NO. 18-10085

DARREL VANNOY                                 SECTION "F"(4)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Quentin Watson ("Watson"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On October 15, 2009, Watson was indicted by a Washington Parish Grand Jury for two counts of first degree murder.[3]  Watson entered a plea of not guilty on November 23, 2009.[4]

The record reflects that around 11:00 a.m. on February 6, 2008, Wendy Rawls went to have lunch at the home of her mother, Anita Smith, in Franklinton, Louisiana.[5]  In the kitchen, Rawls

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 8, Indictment, 10/15/09.

[4] St. Rec. Vol. 1 of 8, Minute Entry, 11/23/09.

[5] The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal. *State v. Watson*, 2014-KA-0350, 2014 WL 4668773, at *1 (La. App. 1st Cir. Sep. 19, 2014); St. Rec. Vol. 2 of 8, 1st Cir.

found the dead bodies of Smith and Smith's nephew, William Lewis, who temporarily was living with her to help with renovations to the house.  Smith had been shot once in the face.  Lewis was shot once in his chest and once in the back of the head.  There was no sign of forced entry into the house.

Although no gun was found, the bullets removed from Smith and Lewis's chest were determined to have been fired from the same Hi-Point 9mm handgun.  The bullet removed from Lewis's head also was fired from a Hi-Point 9mm handgun, but it was too damaged to determine if it was from the same gun.

The police also found a 9mm spent shell casing on the floor near the kitchen table.  The shell casing was processed, and a DNA profile was found on it.  The DNA profile was entered into the Combined DNA Index System ("CODIS") database.  In July 2009, CODIS produced an offender match for Watson, who knew Smith and her daughters.  After his arrest, Watson was questioned by Captain Justin Brown and Trooper Richard Newman, both with the Franklinton Police Department.  In his video-taped statement, Watson initially denied involvement in the killings, but eventually confessed to shooting both Smith and Lewis.

After being found competent to proceed,[6] Watson was tried before a jury on July 15 through 18, 2013, and found guilty as charged on both counts.[7]  At a July 24, 2013, hearing, the Trial Court

---

Opinion, 2014-KA-0350, pp. 2-3, 9/19/14.

[6]St. Rec. Vol. 1 of 8, Hearing Transcript, 12/7/12; Letter to the Court, 12/4/12; Letter to the Court, 8/27/12; Minute Entry, 3/16/12; Trial Court Order, 8/2/11; Minute Entry, 7/29/11; Minute Entry, 7/15/11; Minute Entry, 10/29/10; Letter to the Court, 10/21/10.  Prior to trial, the State announced that it would not seek the death penalty on the first degree murder charges.  St. Rec. Vol. 2 of 8, Minute Entry, 3/8/13.

[7]St. Rec. Vol. 2 of 8, Trial Minutes, 7/15/13; Trial Minutes, 7/16/13; Trial Minutes, 7/17/13; Trial Minutes, 7/18/13; Jury Verdict (Count 1), 7/18/13; Jury Verdict (Count 2), 7/18/13; St. Rec. Vol. 4 of 8, Trial Transcript, 7/15/13; St. Rec. Vol. 5 of 8, Trial Transcript (continued). 7/15/13; St. Rec. Vol. 6 of 8, Trial Transcript, 7/16/13; St. Rec. Vol. 7 of 8, Trial Transcript, 7/17/13; Trial Transcript, 7/18/13.

denied Watson's motion for new trial based on the voluntariness of Watson's confession.[8]  After waiver of legal delays, the Court sentenced Watson to serve life in prison on each count concurrently and without benefit of parole, probation, or suspension of sentence.[9]

On direct appeal to the Louisiana First Circuit Court of Appeal, Watson's appointed counsel asserted two errors:[10] (1) the state trial court erred when it denied the motion to suppress Watson's inculpatory statements because the statements were taken after he invoked his right to remain silent; and (2) the state trial court erred when it denied the motion for new trial because Watson invoked his right to remain silent during his inculpatory statement to police.

The Louisiana First Circuit held that Watson was precluded from asserting on appeal his claims related to the invocation of the right to remain silent during his interview.[11]  Citing La. Code Crim. P. arts. 521 and 703 and related state court case law, the Court held that the urging of the claim was not timely before the state trial court in the second, oral motion to suppress argued prior to trial or the motion for new trial.  The Court concluded that, as a result, the claims were not preserved for appeal or properly before the Court for appellate review.  Alternatively, the Court held that the claim was meritless finding that Watson did not clearly assert the right to remain silent and instead merely commented, essentially, that the officers' questions were repetitive of matters he had already discussed.  The Court, therefore, held that the state trial court did not err in denying either motion.

---

[8]St. Rec. Vol. 2 of 8, Sentencing Minutes, 7/24/13; Motion for New Trial, 7/24/13; St. Rec. Vol. 7 of 8, Sentencing Transcript, 7/24/13.

[9]St. Rec. Vol. 2 of 8, Sentencing Minutes, 7/24/13; St. Rec. Vol. 7 of 8, Sentencing Transcript, 7/24/13.

[10]St. Rec. Vol. 2 of 8, Appeal Brief, 2014-KA-0350, 4/15/14.

[11]*Watson*, 2014 WL 4668773, at *1; St. Rec. Vol. 2 of 8, 1st Cir. Opinion, 2014-KA-0350, 9/19/14.

The Louisiana Supreme Court denied Watson's related writ application without stated reasons on June 19, 2015.[12]  Watson's conviction was final under federal law ninety (90) days later, on September 17, 2015, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On June 21, 2016, Watson through counsel filed an application for post-conviction relief to the Trial Court asserting that trial counsel was ineffective for failing to prepare and investigate the case.[13]  In an amended and supplemental memorandum, Watson's counsel clarified the claim in two parts:[14] (1) trial counsel was ineffective for failing to preserve the challenge to the right to remain silent issue by timely motion to suppress; and (2) Watson was denied the right to testify by his counsel.  The Trial Court denied relief on April 18, 2017, finding the claims meritless.[15]  The Court held that the first claim was meritless in light of the Louisiana First Circuit's alternative consideration of the merits despite the fact that the claim was not preserved for appeal.  In addition, the transcript established that Watson voluntarily waived his right to testify.

The Louisiana First Circuit denied Watson's counsel-filed writ application without stated reasons on July 24, 2017.[16]  Watson's counsel also filed for review in the Louisiana Supreme

---

[12]*State v. Watson*, 172 So.3d 649 (La. 2015); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2014-KO-2211, 6/19/15; La. S. Ct. Writ Application, 14-KO-2211, 10/23/14 (dated 10/15/14); St. Rec. Vol. 2 of 8, La. S. Ct. Letter, 2014-KO-2211, 10/29/14.

[13]St. Rec. Vol. 2 of 8, Application for Post-Conviction Relief, 6/21/16.

[14]St. Rec. Vol. 2 of 8, Memorandum, 1/12/17; Motion to Amend, dated 6/13/16; Trial Court Order, 8/5/16.

[15]St. Rec. Vol. 2 of 8, Reasons for Judgment, 4/18/17; Judgment, 4/18/17; *see also*, State's Response, 3/15/17.

[16]*State v. Watson*, No. 2017KW0737, 2017 WL 3140596, at *1 (La. App. 1st Cir. Jul. 24, 2017); St. Rec. Vol. 8 of 8, 1st Cir. Order, 2017-KW-0737, 7/24/17; 1st Cir. Writ Application, 2017-KW-0737, 5/30/17.

4

Court, and the Court denied the application on May 18, 2018, citing *Strickland v. Washington*, 466 U.S. 668 (1984).[17]

## II.    Federal Habeas Petition

On November 19, 2018, after correction of certain deficiencies, the clerk of this Court filed Watson's petition for federal habeas corpus relief in which he asserted under a broad reading the following grounds for relief:[18] (1) the state trial court erred when it denied the motion to suppress and did not grant the motion for new trial based on Watson's claim that his invoked his right to remain silent during his inculpatory statement to police; (2) trial counsel was ineffective for failing to preserve for appeal the challenge to the right to remain silent claim by timely motion to suppress; and (3) he was denied the right to testify by his counsel.

The State opposition response to the petition asserts that the state courts' denial of relief was proper under applicable federal law.[19]  Watson filed a reply to the State's response asserting that the state courts' rulings were contrary to or an unreasonable application of federal law.[20]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[21] applies to this petition, which is deemed filed in this Court under the federal

---

[17]*State v. Watson*, 253 So.3d 1276 (La. 2018); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2017-KP-1409, 10/8/18; La. S. Ct. Writ Application, 17-KP-1409, 8/15/17 (dated 8/14/17); St. Rec. Vol. 2 of 8, La. S. Ct. Letter, 2017-KP-1409, 8/15/17.

[18]Rec. Doc. No. 3.

[19]Rec. Doc. No. 13.

[20]Rec. Doc. No. 17.

[21]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

mailbox rule on October 29, 2018.[22]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."   *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes, and the record reflects, that Watson exhausted state court review of his claims and timely filed this federal habeas corpus petition.   However, as the State recognizes, Watson's challenges to the denial of the motions to suppress and for new trial were not properly preserved for appellate review.   The Louisiana First Circuit clearly recognized the claim to be procedurally defaulted, although it alternatively addressed the merits of the claim.   When the state courts explicitly invoke a procedural bar to review of a federal claim and alternatively reach the merits of the claim, a federal court is still bound by the state procedural default.   *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *see Robinson v. Louisiana*, 606 F. App'x 199, 204 (5th Cir. 2015) (citing *Woodfox v. Cain*, 609 F.3d 774, 796 (5th Cir. 2010)).   While the State's response does not rely on the procedural bar imposed by the state courts in its response, it has <u>not</u> expressly waived procedural default as a defense.

The United States Fifth Circuit has held that when there is no <u>express</u> waiver, the district court may, in its discretion, address the affirmative defenses *sua sponte*.   *Prieto v. Quarterman*,

---

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).   The clerk of court filed Watson's petition on November 19, 2018, when the filing fee was received.   The official stamp of the prison Legal Programs Department reflects that the pleading was received from Watson on October 29, 2018, for electronic mailing to the Court.   Rec. Doc. No. 3, p. 11; *see also*, Rec. Doc. No. 1, p. 11 (original deficient petition).   The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.   *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

456 F.3d 511, 518 (5th Cir. 2006) (citing *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998)) (addressing procedural default); *Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (addressing limitations). When the court exercises its discretion to do so *sua sponte*, it must assure that the petitioner has notice that the issue is being considered. *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir.1999); *Magouirk*, 144 F.3d at 358. Therefore, the Court gives Watson express notice that the Court is considering procedural default to whatever extent, if any, it is not already been noticed by the State. *Fisher*, 169 F.3d at 301; *Magouirk*, 144 F.3d at 358. Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**. *Magouirk*, 144 F.3d at 348.

## IV.    Procedural Default (Claim Nos. 1 and 2)

In his first claim before this Court, Watson argues that the state trial court erred by failing to grant a new trial or suppress the video of his inculpatory statement to police on the grounds that he invoked his right to remain silent during the interview. On direct appeal, the Louisiana First Circuit determined that Watson's first motion to suppress the statement, filed two years before trial, did not rest on the grounds that the he invoked his right to remain silent. The Court also noted that the right to remain silent issue was not part of the argument or testimony at the evidentiary hearing on that original motion, which also was held two years before trial. Instead, the right to remain silent argument was asserted for the first time in an oral motion to suppress made by Watson's trial counsel as the trial commenced in 2013, and which was denied. The argument also was the basis for his counsel's unsuccessful, post-trial motion for new trial. Based on these finding, the Louisiana First Circuit held that, under La. Code Crim. P. arts. 521 and 703

and related state case law, all grounds in support of the motion to suppress should have been made in the first, written pretrial motion addressed two years before trial.[23]  The Court further found that the late-urging of the grounds based on the right to remain silent that were made by counsel in the oral motion and motion for new trial were untimely, procedurally improper and insufficient to preserve the claim for appellate review.  As a result, the Court concluded "that the defendant, in not having raised the issue of his alleged invocation of his right to remain silent during the interview, in either his written motion to suppress inculpatory statement or at the motion to suppress hearing, is precluded from raising this issue on appeal."[24]  The Court later clearly resolved, that "[i]n sum, we find the defendant did not preserve for appellate review his argument that he invoked his right to silence during questioning."[25]

Following this clear procedural holding, the Louisiana First Circuit Court also went on to alternatively explain why, even if considered, Watson's claim had no merit.  This was the last reasoned decision on these claims.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion.); *Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.").

---

[23]Read together, La. Code Crim. P. arts. 521 and 703 provide that a motion to suppress, with few exceptions not relevant here, must be filed with 15 days after arraignment or at a time set by the judge on showing of good cause.

[24]*Watson*, 2014 WL 4668773, at *6; St. Rec. Vol. 2 of 8, 1st Cir. Opinion, 2014-KA-0350, p. 9, 9/19/14.

[25]*Watson*, 2014 WL 4668773, at *10; St. Rec. Vol. 2 of 8, 1st Cir. Opinion, 2014-KA-0350, p. 15, 9/19/14.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 & n.10 (5th Cir. 1995) (citing *Harris*, 489 U.S. at 260, 262). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. The procedural bar also prevails over any alternative discussion of the merits of the claim by a state court. *See Robinson*, 606 F. App'x at 203-04) (citing *Woodfox*, 609 F.3d at 796). In this case, the procedural rules cited by the Louisiana courts bar review of Watson's first federal habeas claim.

A.    **Independent and Adequate**

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." *Fisher*, 169 F.3d at 300.

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 316-17

(2011); *Glover*, 128 F.3d at 902.  A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citation omitted) *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009). The question of the adequacy of a state procedural bar is itself a federal question.  *Beard*, 558 U.S. at 60 (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).

The Louisiana courts relied on La. Code Crim. P. arts. 521 and 703, and related case law, to bar review of Watson's claim that the state trial court should have granted his motions to suppress and for new trial based on the alleged violation of his right to remain silent.  The Louisiana courts regularly and evenhandedly apply these provisions in similar cases to bar review of claims or grounds not properly and timely asserted in a motion to suppress.  *State v. Montejo*, 40 So.3d 952, 967 (La. 2010) ("Louisiana courts have long held a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a [properly filed] motion to suppress; *State v. Johnson*, 993 So.2d 326, 330 (La. App. 4th Cir. 2008) ("[F]ailure to raise a ground for suppressing an item of evidence in a properly filed motion to suppress waives such a basis for exclusion on appeal."); *see State v. Carruth*, No. 2017-0341, 2017 WL 4974608, at *3-4 (La. App. 1st Cir. Nov. 1, 2017) (same); *State v. Langley*, 61 So.3d 747, 780 (La. App. 3rd Cir. 2011) (same); *see also*, *State v. Tucker*, 181 So.3d 590, 612 n.33 (La. 2015) (citing *Montejo*, 40 So.3d at 969-70) ("[T]he Court has 'never allowed a defendant to allege facts for the first time in trial testimony which would support a new argument for suppression of evidence,' defendant may not allege a new basis for suppressing his statements for the first time in a motion for new trial . . ."); *State v. Turner*, __ So.3d __, 2019 WL 1549815, at *6 n.3 (La. App. 2d Cir. Apr. 1, 2019) ("A defendant who does not file a motion to suppress . . . fails to preserve the issue … as an error on appeal."); *State in the Interest of D.S.*, 255 So.3d 1209, 1214

(La. App. 4th Cir. 2018) (discussing the failure to timely file a motion to suppress under Articles 521 and 703); *State v. Foster*, 59 So.3d 495, 499 (La. App. 3d Cir. 2011) (Art. 703 requires all grounds to support a motion to dismiss be filed timely).

Therefore, the Court finds that failure to comply with the procedural mandates imposed under La. Code Crim. P. arts. 521 and 703 is both independent of federal law and adequate to bar review of Watson's claim that the state courts erred in barring his challenge to the denial of the motion to suppress based on his right to remain silent. The state courts' rulings were based on Louisiana law establishing procedural requirements for the presentation of claims for review. *See Fisher*, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue). The state courts' reasons for barring review of Watson's claim were therefore independent of federal law and adequate to bar review of his claims in this federal habeas court.

### B.    <u>Cause and Prejudice</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice" attributed it to or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Fisher*, 169 F.3d at 301 (citing *Magouirk*, 144 F.3d at 359); *Coleman*, 501 U.S. at 748-50); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

Watson has not offered any cause for his default that would excuse the procedural bar imposed by the Louisiana courts. The record does not support a finding that any factor external to the defense prevented petitioner from asserting these claims in a procedurally proper manner. The record reflects no action or inaction by the State which prevented him from properly and timely asserting these claims in the state courts. As later discussed in this Report, Watson's claim that counsel was ineffective for allowing the default has no merit and does not establish cause to excuse the default.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

### C.    Fundamental Miscarriage of Justice

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing

12

by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903. Watson presents no argument and the record contains nothing establishing his actual innocence on the underlying conviction.

For these reasons, Watson has failed to overcome the procedural bar to review of his first claim asserted before this federal court. The claim must be dismissed with prejudice as procedurally defaulted.

Furthermore, should a reviewing court choose to overlook or excuse Watson's procedural bar, the state courts' alternative denial of relief on the claims as meritless was not contrary to or an unreasonable application of federal law for the reasons addressed below in this Report in connection with Watson's related ineffective assistance of counsel claim.

## V.    Standards of a Merits Review of the Remaining Claims

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and

convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410.

The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).  In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.    Effective Assistance of Counsel (Claim Nos. 2 and 3)

Broadly construed, Watson alleges that he was denied effective assistance because his counsel failed to timely raise and preserve for appeal the issue of his invocation of the right to remain silent.  He also claims that his trial counsel prevented him from testifying at trial, even though he told the state trial court that he wanted to testify.  Watson first asserted these claims in his application for post-conviction relief.  The Louisiana Supreme Court ultimately denied relief to Watson citing generally to the *Strickland* standards.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel.  In *Strickland*, the Supreme

Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Id.*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th

Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the

basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates

the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th

Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

  To prove prejudice, the petitioner "must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore,

"[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."  *Day v. Quarterman*,

566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a

reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Cullen*,

563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not

just "conceivable," likelihood of a different result.  *Harrington*, 562 U.S. at 112.  To determine

whether prejudice occurred, courts must review the record to determine "the relative role that the

alleged trial errors played in the total context of [the] trial."  *Crockett v. McCotter*, 796 F.2d 787,

793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no

showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal

habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694

F.2d 1008, 1012 (5th Cir. 1983)).

  On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he

question is whether an attorney's representation amounted to incompetence under prevailing

professional norms, not whether it deviated from best practices or most common custom."

*Harrington*, 562 U.S. at 105.  The *Harrington* Court went on to recognize the high level of

deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2). This Court must also apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000). Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The denial of effective assistance of counsel under *Strickland* is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox*, 609 F.3d at 789. The

question before the Court is whether the state courts' denial of relief on these claims was contrary to or an unreasonable application of United States Supreme Court precedent.

### A.   <u>Preserve the Right to Remain Silent Claim (Claim No. 2)</u>

Although Watson's challenge to the state courts' failure to suppress the statement was procedurally barred (see discussion above), the Louisiana First Circuit on direct appeal alternatively addressed the lack of merit in the claim with great detail.  Relying on *Berghuis v. Thompkins*, 560 U.S. 370 (2010) and related state case law, the Louisiana First Circuit recognized the Supreme Court's mandate that an accused must unambiguously invoke the right to remain silent to compel police to cease questioning.[26]

After reviewing the statement, the Louisiana First held that Watson's statement during questioning that he did not "want to talk about it no more," was "clearly" Watson dodging the question about his presence in Anita's house rather than an invocation of the right to remain silent.[27]  In addition, the Louisiana First Circuit held that the officers reasonably construed his statement that "I don't even want to talk, man," and the act of putting his head down were not clear grounds to stop the questions, but instead signs of Watson's emotional frustration in "response to growing awareness by the defendant that the officers knew that he, and he alone, was in Anita's house when Anita and William were killed."[28]

The Court ultimately held that, "[t]here was no unambiguous invocation by the defendant of his right to terminate all questioning."[29]  The Court further resolved that the record proved

---

[26]*Watson*, 2014 WL 4668773, at *9 (citing *Berghuis*, 560 U.S. at 381-82 (citing *United States v. Davis*, 512 U.S. 452, 459-61 (1994)); St. Rec. Vol. 2 of 8, 1st Cir. Opinion, 2014-KA-0350, 9/19/14.

[27]*Watson*, 2014 WL 4668773, at *9; St. Rec. Vol. 2 of 8, 1st Cir. Opinion, 2014-KA-0350, pp. 13-14, 9/19/14.

[28]*Watson*, 2014 WL 4668773, at *9; St. Rec. Vol. 2 of 8, 1st Cir. Opinion, 2014-KA-0350, p. 14, 9/19/14.

[29]*Watson*, 2014 WL 4668773, at *10; St. Rec. Vol. 2 of 8, 1st Cir. Opinion, 2014-KA-0350, pp. 14-15,

Watson knowingly and intelligently waived his constitutional rights and voluntarily gave his statement to police.

First, the Court finds that the state courts' alternative finding that the claim was meritless was neither contrary to nor an unreasonable application of a federal law.  It is well settled that a person undergoing custodial interrogation by police has the right to an attorney and the right to remain silent. *Hopper v. Dretke*, 106 F. App'x 221, 230 (5th Cir. 2004).  The investigating officers must honor an accused unambiguous invocation of those rights. *Id.*  However, to be effective, the invocation of those rights must be <u>un</u>ambiguous, and the right to silence is <u>not</u> unambiguously invoked simply by staying silent.  *Berghuis*, 560 U.S. at 381-82.  Similarly, an equivocal or ambiguous act, omission, or statement is not enough to invoke the right and cut off questioning. *Id.* at 382.  To successfully invoke the right, requiring police to suspend questioning, an accused must specifically state his desire to remain silent or expressly decline to continue talking to police. *Id.*  Moreover, if an accused makes an ambiguous or equivocal statement, or simply remains silent, the police are not required to end the interrogation or seek clarification from the accused. *Id.* at 381 (citing *United States v. Davis*, 512 U.S. 452, 459 (1994)).  Even a clear and unambiguous invocation of the right to remain silent does not prohibit further questioning if law enforcement officials "scrupulously honor" the defendant's assertion of the right and perhaps later seek a waiver of the right to continue questioning.  *Michigan v. Mosley*, 423 U.S. 96, 102-04 (1975) (holding that police must scrupulously honor a suspect's invocation of the right to silence); *Gutierrez v. Stephens*, 590 F. App'x 371, 376 (5th Cir. 2014).

This Court has reviewed the video recording of Watson's statement to confirm the findings made by the state courts and apply the deference due to the state courts' findings under the

---

9/19/14.

AEDPA.[30]   During the interview, lasting more than one-hour and fifty-four minutes, Watson expressly waived his constitutional rights and readily spoke with the officers, repeatedly denied killing anyone.  About an hour into the interview, Watson admitted being in the victim's house after his acquaintance, a man named Jeff from Florida, shot the victims.  The officers repeatedly told Watson that the "Jeff story" did not make sense and seemed incomplete.  About one hour and twenty-four minutes into the video, Watson became frustrated with the officers' continued questions about Jeff and said he did not want to talk about it anymore, apparently because they were not believing him anyway.  Despite that statement, Watson continued to speak to the officers repeating several times that he did not kill the people.  Watson put his head down for a moment or so and began to cry, appearing emotionally distraught.  He nevertheless, continued to respond to the officers and eventually looked up to ask what would happen to him.  He also soon broke down in tears and confessed to the murders.  He explained in detail to the officers why he went to the house and what happened there.

As determined by the state courts, under the circumstances of the interview, together with Watson's actions and demeanor, Watson at no time unequivocally invoked his right to remain silent during questioning.  Under the precedent cited above, neither his statement of frustration nor his momentary silence acted to clearly compel the officers to stop the interview.  As the state courts concluded, there is no doubt that Watson did not want to repeat his answers to the officer's questions about the truth of the alleged "Jeff story."  Watson at no time expressly sought to end

---

[30]Rec. Doc. Nos. 13-2, 14, 15, 16.  The admissibility of a confession is a mixed question of law and fact. *Miller v. Fenton*, 474 U.S. 104, 112 (1985); *ShisInday v. Quarterman*, 511 F.3d 514, 522 (5th Cir. 2007).  Therefore, under the AEDPA, a federal habeas court must defer to the state courts' decision on such a claim, unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998).

the interview or questioning altogether.  Thus, the state courts' alternative determination that the claim was meritless was not contrary to or an unreasonable application of Supreme Court law.

Having resolved the propriety of the state courts' ruling under the AEDPA, Watson has failed to show that his counsel's failure to timely assert or preserve the issue was ineffective under the *Strickland* standards.  It is well settled that counsel is not required by the Sixth Amendment to file meritless motions.  *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."); *Williams v. Cain*, Nos. 06-0224 c/w 06-0334, 2009 WL 1269282, at *12 (E.D. La. May 7, 2009) ("Counsel is not considered ineffective for failing to assert a baseless and frivolous motion.").  For this reason, counsel's failure to file a motion that ultimately would be meritless "cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) (counsel's failure to file motion to suppress on a meritless ground was not deficient performance); *Johnson*, 306 F.3d at 255; *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990).

First, as noted by the State in its opposition response, the state courts did provide an alternative review of the merits of the claim, leaving no doubt that Watson did receive some review of the claim defaulted by counsel's untimely urging of the claim.  In addition, as the state courts and this Court also have resolved, a motion to suppress based on Watson's right to silence would not have been meritorious.  Thus, his counsel was not ineffective for failing to urge, or urge sooner, a motion based on the right to remain silent ground.  Watson has not demonstrated that the state

courts unreasonably rejected his claim of ineffective assistance of counsel or that the denial of relief was contrary to Supreme Court law.  Watson is not entitled to relief on this claim.

### B.    <u>Right to Testify (Claim No. 3)</u>

Watson claims that he was denied the right to testify at trial by his counsel.  He claims that he told his counsel that he wanted to testify, and they encouraged him not to do so.  As a result, Watson advised the Court that he would not testify; however, a few minutes later, he changed his mind and told the state trial court that he "needed" to testify.  He contends that, rather than accepting this clear statement of his right to testify, the state trial court had him discuss it again with counsel, who convinced him not to testify.  Watson claims that ultimately, it was not his choice and his attorneys prevented him from testifying.

On post-conviction review, the state trial court reviewed the trial transcript and found that Watson made the decision not testify after discussing it on the record with the Court.  The Louisiana Supreme Court ultimately denied relief generally under *Strickland*.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments.  *Rock v. Arkansas*, 483 U.S. 44, 49 (1987); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001); *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994).  When, as here, a habeas petitioner alleges that his counsel, not the court or the prosecution, prevented him from testifying, the Fifth Circuit has held that the "'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'"  *Sayre*, 238 F.3d at 634 (quoting *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000)).

A criminal defendant may waive his right to testify if that waiver is knowing, intelligent and voluntary.  *Bower*, 497 F.3d at 473 (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir.

1997)).  A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'"  *Emery*, 139 F.3d at 198 (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand."  *Turcios v. Dretke*, No. 97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)); accord *Jones v. Cain*, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, No. 06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007).

In *Underwood*, the United States Eleventh Circuit Court of Appeals identified numerous problems that would result if habeas petitioners were not required to satisfy the burden of proof. *Underwood*, 939 F.2d at 475-76. Adopting the reasoning in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), the *Underwood* court recognized that an assertion that counsel forbade the defendant from testifying, even if made under oath,

> is insufficient to require a hearing or other action on his claim that his right to testify
> in his own defense was denied him.  It just is too facile a tactic to be allowed to
> succeed. Some greater particularity is necessary - and also we think some
> substantiation is necessary, such as an affidavit from the lawyer who allegedly
> forbade his client to testify - to give the claim sufficient credibility to warrant a
> further investment of judicial resources in determining the truth of the claim.

*Underwood*, 939 F.2d at 475-76; accord *Gross v. Knight*, 560 F.3d 668, 672 (7th Cir.), *cert. denied*, 558 U.S. 950 (2009).

Addressing similar claims, the United States Fifth Circuit has also cited to the *Underwood* holding and "observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic."  *United States v. Martinez*, 181 F.3d

24

627, 628 (5th Cir. 1999) (quoting *Underwood*, 939 F.2d at 476) (a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t just is too facile a tactic to be allowed to succeed").  The Fifth Circuit agreed that there is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right . . . to testify in his own behalf without rendering the criminal process unworkable."  *Id.* at 628 (citing *Underwood*, 939 F.2d at 475).

Watson has presented no support for his contention that he was forced by counsel to waive his right to testify.  The transcript also reflects nothing to indicate that Watson was forced to remain silent at trial.  To the contrary, even after Watson waffled about his decision, the record indicates that his decision not to testify was made after reflective discussions with the Court, his mother, and his counsel.

After the State rested its case, the Court allowed Watson and his counsel to confer on the matter of his testifying.  While the jury was at recess, his counsel advised the state trial court that they advised Watson not to testify, because they had sufficient support for their arguments to the jury without Watson's testimony.[31]  Watson confirmed for the Court that he had discussed the matter with his counsel, and he clearly indicated to the Court that he would follow counsel's advice not to testify.[32]  The Court then discussed that decision with Watson directly.[33]

> THE COURT:         Mr. Watson, as you know, it is not my obligation to tell you to testify or not to testify.  It is my obligation to make sure you understand that you have an absolute right to testify, if you choose to.  That does, of course, subject you to certain cross examination and other things that I'm sure you've gone over with

---

[31]St. Rec. Vol. 7 of 8, Trial Transcript, pp. 9-10, 7/18/13.

[32]*Id.*, at p. 10.

[33]*Id.*, at pp. 10-11

you attorney.  You also have the absolute right not to testify.  I just need to make
sure, it is your decision not to testify; is that correct?

MR. WATSON:          Yes, Your Honor, sir.

THE COURT:          All right.  That is fine.  I will accept that decision. [ . . .]

As the Court continued to discuss certain edits to the proposed jury charges, Watson
interrupted the discussions to say, "Your Honor, I decided I will testify.  I need to.  I need to
testify."[34]  Upon hearing this, the Court directed Watson to speak with his counsel.  His counsel
also indicated on the record that if Watson chose to testify, it would be "much against the advice"
counsel had given him and would bring in information that would only hurt his case.[35]

After discussions between Watson and his counsel, the following exchange appears on the
record outside of the presence of the jury:[36]

MR. FONTENOT:      Your Honor, we've had a chance to address Mr. Watson's
concerns that just occurred to him, and we actually have even had an opportunity
to allow him to speak with his mother regarding the same incidents.  We explained
everything to her, and he was able to talk with her.  Based on the conversations, my
understanding is that, although he completely understands he does have the right to
testify, he has decided to listen to the advice of counsel and remain silent.  Is that
correct?

MR. WATSON:          Yes, Your Honor.

THE COURT:          All right, Mr. Watson, same discussion we had a few
moments ago.  You have an absolute right to testify.  You have an absolute right
not to.  It does not matter to me; I'm not telling you to do one or the other.  It's your
choice.  But you need to clearly tell me now, are you testifying or are you not
testifying?

MR. WATSON:          No, Your Honor, sir.

THE COURT:          The Court will accept that decision.

---

[34]*Id.*, at p. 12.

[35]*Id.*, at pp. 12-13.

[36]*Id.*, at p. 16.

26

Following this exchange, Watson made no further comment about his decision not to testify. The record does not indicate that Watson was under duress or unnecessary pressure by counsel in choosing not to testify. Watson was able to confer with his mother about the decision and the matters he would have discussed if he chose to testify. The state trial court gave Watson ample opportunity to choose to testify despite the advice of counsel and his mother. Watson, nevertheless, made the choice and knowingly and voluntarily relinquished that right.

As discussed in *Underwood* and its progeny, the record contains nothing to give credence to Watson's self-serving claim that his counsel prevented him from testifying. Watson has provided no substantiation for his blanket assertion that his counsel forced his decision not to testify. He also has offered no proof that the discussions were coercive in any way.

In addition, Watson also has not established that his counsel's advice was unreasonable or prejudicial. Counsel acts within the ambit of sound trial strategy to keep evidence of the defendants' credibility, or lack thereof, from the jury. His counsel repeated on the record that Watson's testimony would have opened the door to matters that would be harmful to the defense, including his three inconsistent statements about what happened. Watson has not countered this representation.

On the stand, Watson would have been exposed to cross-examination regarding both his guilt and character, including his prior criminal history and drug use.[37] In addition, Watson does not indicate, nor has he ever indicated, any specific proposed testimony he might have provided that would have benefited his defense.

---

[37]Watson speaks of some of his prior criminal record during his statement to police. Rec. Doc. Nos. 13-2, 14, 15, 16.

For these reasons, Watson has not demonstrated any deficiency or prejudice resulting from counsel's advice that he not testify at trial.  The denial of relief by the state courts on this issue was not contrary to or an unreasonable application of *Strickland*.  Watson is not entitled to relief on this claim.

## VII.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Quentin Watson's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[38]

New Orleans, Louisiana, this 21st day of May, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[38]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.